**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

**NATIONWIDE ASSURANCE COMPANY** and
**AMCO INSURANCE COMPANY**, )
)
Plaintiffs, )
)
v. ) Case No.: 5:26-cv-159
)
**ORR AUTO, INC.** and )
**AUTOPLEX EXTENDED SERVICES, LLC**, )
)
Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

COME NOW Plaintiffs, Nationwide Assurance Company ("Nationwide") and AMCO Insurance Company ("AMCO"), by and through the undersigned counsel, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and for their Complaint for Declaratory Judgment, hereby state as follows:

### PARTIES

1. Plaintiff AMCO is an insurance company incorporated, organized, and existing under the laws of the State of Iowa with its principal place of business in the State of Iowa, and it is therefore a corporate citizen of the State of Iowa.

2. Plaintiff Nationwide is an insurance company incorporated, organized, and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio, and it is therefore a corporate citizen of the State of Ohio.

3. Defendant Orr Auto, Inc. D/B/A Orr Volkswagen of Texarkana ("Orr Volkswagen") is a corporation formed under the laws of the State of Texas, with its principal place of business in the State of Texas, and it is therefore a corporate citizen of the State of Texas. Service upon Orr

Volkswagen can be effectuated upon its registered agent, Floyd Law, PLLC, at 3211 McKnight Crossing, Texarkana, Texas 75503.

4. Defendant Autoplex Extended Services, LLC D/B/A Motor Vehicle Services ("Autoplex") is a limited liability company formed under the laws of Missouri, with its principal place of business in the State of Missouri. Upon information and belief, the member(s) who own(s) Autoplex are residents and citizens of the State of Missouri. Therefore, Autoplex is a corporate citizen of the State of Missouri. Service upon Autoplex can be effectuated upon its registered agent, Keith Horneker, at 2275 First Capitol Drive, St. Charles, MO 63301.

**JURISDICTION AND VENUE**

5. Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 2201 because Plaintiffs are seeking a determination of their rights and obligations under insurance policies.

6. Jurisdiction is also proper with this Court pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

7. This Court has personal jurisdiction over all Defendants as they are either corporate citizens of Texas or have sufficient minimum contacts with Texas by purposely soliciting and conducting business in Texas, purposefully availing themselves of the privileges of conducting activities in Texas.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action occurred within this judicial district and the Underlying Lawsuit is pending within this judicial district.

## GENERAL ALLEGATIONS

### *The Insurance Policies*

9. Plaintiffs bring this action seeking interpretation of insurance policies they issued to Autoplex, as well as a declaration of their rights and obligations thereunder.

10. Plaintiff AMCO issued to Autoplex as named insured the following premier businessowners policies:

a. Policy No. ACP BPO 7295033091, with effective dates of May 1, 2020, to May 1, 2021. A copy of this policy is attached hereto as Exhibit A and is incorporated by reference as if fully set forth herein.

b. Policy No. ACP BPO 7205033091, with effective dates of May 1, 2021, to May 1, 2022. A copy of this policy is attached hereto as Exhibit B and is incorporated by reference as if fully set forth herein.

11. Plaintiff Nationwide issued to Autoplex as named insured the following premier businessowners policies:

a. Policy No. ACP BP017215033091, with effective dates of May 1, 2022, to May 1, 2023. A copy of this policy is attached hereto as Exhibit C and is incorporated by reference as if fully set forth herein.

b. Policy No. ACP BP027225033091, with effective dates of May 1, 2023, to May 1, 2024. A copy of this policy is attached hereto as Exhibit D and is incorporated by reference as if fully set forth herein.

c. Policy No. ACP BP027235033091, with effective dates of May 1, 2024, to May 1, 2025. A copy of this policy is attached hereto as Exhibit E and is incorporated by reference as if fully set forth herein.

d. Policy No. ACP BP027245033091, with effective dates of May 1, 2025, to May 1, 2026. A copy of this policy is attached hereto as Exhibit F and is incorporated by reference as if fully set forth herein.

12. The insurance policies described in paragraphs 10-11 above are referred to collectively herein as the "Policies."

13. Subject to their terms, conditions, definitions, limitations, and exclusions, the Policies each provide businessowners liability coverage with limits of $1,000,000 each occurrence, $1,000,000 for personal and advertising injury, and $2,000,000 aggregate.

14. The Policies contain the following provisions, among others:

***

**PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM**

…

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. …

I. **COVERAGES**

A. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **INSURING AGREEMENT**

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy. …

…

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

…

B. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **INSURING AGREEMENT**

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

…

2. **EXCLUSIONS**

This insurance, including any duty we have to defend "suits", does not apply to personal and advertising injury:

…

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**
Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."
HOWEVER, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

…

D. **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or any "suit" against an insured we defend:

…

e. All court costs taxed against the insured in the "suit". HOWEVER, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

…

IV. **LIABILITY CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

…

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You and any insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense that may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

…

Your obligation under relative to notifying us of "occurrence", offense, claim or "suit" applies only when the "occurrence", offense, claim or "suit" is known to: [1]

…

d. You, a member, or your managers, if you are a limited liability company;

…

[1] Per endorsement PB 20 98 04 11 in the Policies effective from May 1, 2020 to May 1, 2022, and per endorsement PB 20 98 01 17 in the Policies effective from May 1, 2022 to May 1, 2026.

f. An "employee" who is either designated by you to give such notice of an "occurrence" or offense (such as an insurance, loss control or risk manager or administrator) or a manager or supervisor responsible for the operation or oversight of a department, crew, business unit or division.

…

V. **DEFINITIONS**

…

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
   a. Notices that are published include material placed on the internet or on similar electronic means of communication; and
   b. Regarding websites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

…

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death resulting from any of these at any time.[2]

…

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[3]

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f. The use of another's advertising idea in your "advertisement"; or
   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".[4]

…

17. **"Property damage"** means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. …
   b. Loss of use of tangible property that is not physically injured. …[5]

***

[2] Per endorsement PB 20 98 01 17, contained only in the Policies effective from May 1, 2022 to May 1, 2026.
[3] Paragraph 14 in the Policies effective from May 1, 2022 to May 1, 2026.
[4] Paragraph 15 in the Policies effective from May 1, 2022 to May 1, 2026.
[5] Paragraph 18 in the Policies effective from May 1, 2022 to May 1, 2026.

***The Underlying Lawsuit***

15. On February 29, 2024, Orr Volkswagen filed a complaint against Autoplex in the United States District Court for the Eastern District of Texas, bearing case number 5:24-cv-00029-RWS-JBB (the "Underlying Lawsuit"), naming Autoplex as defendant. A copy of Plaintiff's Original Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit G.

16. The complaint in the Underlying Lawsuit alleges that Autoplex violated federal and state laws, including unfair competition under the Lanham Act, passing off, trademark infringement, and unjust enrichment laws, by advertising and marketing its vehicle service contracts that included Orr Volkswagen's trademarks.

17. The complaint in the Underlying Lawsuit alleges that Orr Volkswagen possesses legally protectable common law trademarks in "Orr" and "Orr Volkswagen," and that Autoplex has improperly and misleadingly used those trademarks in advertisements for its vehicle service contracts.

18. Upon information and belief, Autoplex was served in the Underlying Lawsuit on April 9, 2024, when a copy of the complaint and summons was left with an Autoplex employee at Autoplex's principal business address.

19. Upon information and belief, Autoplex was served again in the Underlying Lawsuit on May 1, 2024, when a copy of the complaint and summons were served upon the Texas Secretary of State, by reason of Autoplex not maintaining a registered office in the State of Texas.

20. On July 16, 2024, a Clerk's Entry of Default was entered against Autoplex in the Underlying Lawsuit, as Autoplex had not filed anything in response to the complaint.

21. On July 25, 2024, Orr Volkswagen filed a Motion for Default Judgement, requesting that the Court enter an order in Orr Volkswagen's favor as to liability only.

22. Upon information and belief, Autoplex was mailed notices of the Clerk's Entry of Default and the Motion for Default Judgment in July 2024.

23. On September 5, 2024, the Court in the Underlying Lawsuit mailed a notice of hearing pertaining to the Motion for Default Judgment to Autoplex's principal business address.

24. Upon information and belief, Autoplex received that notice of hearing from the Court and signed off on the certified mail receipt on September 9, 2024.

25. On October 21, 2024, the Court in the Underlying Lawsuit mailed a notice that the Magistrate Judge recommended that default judgment be entered against Autoplex to Autoplex's principal business address.

26. Upon information and belief, Autoplex received that notice from the Court and signed off on a certified mail receipt on October 28, 2024.

27. On November 26, 2024, the Court granted Orr Volkswagen's Motion for Default Judgment and entered a judgment finding that Autoplex engaged in unfair competition by using the marks "Orr Volkswagen of Texarkana," "Orr Volkswagen," and "Orr," and its use has created and will continue to create, a likelihood of confusion and actual confusion in the minds of potential consumers, as to the source, affiliation or sponsorship, of Autoplex's products and services in a way that infringes Orr Volkswagen's name and marks.

28. The Court also found that Autoplex made false and misleading representations of fact that are likely to cause, and have caused, confusion or mistake, and that these false and misleading representations are likely to deceive as to the affiliation, connection, or association of Autoplex with Orr Volkswagen and are likely to cause confusion as to the origin, sponsorship, or approval of Autoplex's products or service. The Court held that Autoplex's behavior constituted

unfair competition, unlawful "passing off," trademark infringement, and unjust enrichment under Texas law.

29. The Court's November 26, 2024, Order left the matters of Orr Volkswagen's damages, costs, any finding of exceptionality, any requests for injunctive relief by Orr Volkswagen, and attorney fees under the jurisdiction of the Court to be resolved at trial.

30. On December 11, 2024, Orr Volkswagen mailed a copy of the Court's Order Approving Default Judgment to Autoplex's principal business address.

31. Upon information and belief, Autoplex received a copy of the Default Judgment Order on December 16, 2024 and signed off on a certified mail receipt that day.

32. On September 10, 2025, attorney Christopher Thornton filed an entry of appearance on behalf of Autoplex in the Underlying Lawsuit.

33. On September 29, 2025, Autoplex filed a Motion to Set Aside Judgment, requesting that the Court set aside its November 26, 2024, Order granting default judgment against Autoplex. In the motion, Autoplex asserted that it was unaware of the lawsuit until May 2025 and that it had not been properly served with a summons.

34. On November 20, 2025, the Court in the Underlying Lawsuit scheduled a hearing on damages to take place on September 28, 2026.

35. Following briefing by the parties, on December 23, 2025, the Court entered an Order denying Autoplex's Motion to Set Aside Judgment.

36. From October 2025 through August 2026, counsel for Autoplex was actively engaged in filings, discovery, and negotiations in the Underlying Lawsuit.

***Late Notice to Plaintiffs***

37. On August 19, 2026, Autoplex provided notice of the Underlying Lawsuit to Plaintiffs. Prior to August 19, 2026, Plaintiffs were not provided any notice of the Underlying Lawsuit or any of the claims asserted therein.

38. Upon being provided notice of the Underlying Lawsuit on August 19, 2026, Plaintiffs assigned defense counsel to defend Autoplex in the Underlying Lawsuit subject to a reservation of rights, pursuant to a reservation of rights letter dated August 26, 2026.

***Grounds for Declaratory Relief***

39. An actual case or controversy of a judicial nature exists between the parties concerning the rights and obligations of each party under the Policies, and litigation as to this controversy is inevitable and imminent.

40. Resolution of the matters raised in this Complaint for Declaratory Judgment will dispose of all issues and disputes between the parties.

41. All necessary and proper parties are before the Court with respect to the matters in controversy.

42. Plaintiffs have no adequate remedy at law.

**COUNT I – DECLARATORY JUDGMENT – LATE NOTICE**

43. Plaintiffs hereby incorporate and re-allege each and every allegation set forth in Paragraphs 1 through 42 above.

44. The Policies require Autoplex to notify Plaintiffs as soon as practicable if a claim is made or suit is brought against Autoplex, see to it that Plaintiffs receive written notice of the claim or suit as soon as practicable, and immediately send Plaintiffs copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

45. Autoplex was served with the complaint in the Underlying Lawsuit in April 2024 and May 2024.

46. Autoplex received notices from the Court regarding developments in the Underlying Lawsuit in September 2024, October 2024, and December 2024.

47. Autoplex claims it became aware of the lawsuit in May 2025.

48. Autoplex began actively participating in the lawsuit in September 2025 and continued actively participating through August 2026.

49. Nonetheless, Autoplex failed to provide Plaintiffs with any notice of the Underlying Lawsuit or the claims asserted therein until August 19, 2026.

50. By the point at which Autoplex finally provided Plaintiffs notice of the Underlying Lawsuit, Autoplex had been in default for over two years, default judgment had been in place for over a year and a half, Autoplex had been participating in the Underlying Lawsuit for almost a full year, Autoplex's motion to set aside the default had been denied, and the trial on damages was approximately one month away.

51. August 19, 2026, was the first date that Autoplex provided Plaintiffs notice of the Underlying Lawsuit, and it was the first date that Autoplex sought defense and indemnity coverage from Plaintiffs for the Underlying Lawsuit.

52. Autoplex's failure to timely provide notice to Plaintiffs was without reasonable excuse or justification.

53. Plaintiffs have been, are, and will be prejudiced by Autoplex's delay in providing notice of the Underlying Lawsuit.

54. Because of Autoplex's late notice, Plaintiffs had no ability to set aside the entry of default, contest issues of liability, or otherwise defend the Underlying Lawsuit as they would have been able to if notice had been promptly provided.

55. Autoplex's unjustified delay in providing any notice to Plaintiffs of the Underlying Lawsuit constitutes a material breach of the prompt notice provisions in the Policies. Autoplex unreasonably failed to provide Plaintiffs prompt notice of the Underlying Lawsuit and Plaintiffs were prejudiced by the delayed notice, such that no coverage is owed by Plaintiffs under the Policies with respect to the Underlying Lawsuit.

56. Therefore, Plaintiffs have no obligation to defend or indemnify Autoplex with respect to the Underlying Lawsuit.

**COUNT II – DECLARATORY JUDGMENT – SCOPE OF COVERAGE**

57. Plaintiffs hereby incorporate and re-allege each and every allegation set forth in Paragraphs 1 through 56 above.

58. The insuring agreement of Coverage A of the Policies states that coverage is only afforded for damages that are because of "bodily injury" or "property damage" caused by an "occurrence."

59. The Underlying Lawsuit does not allege damages for a bodily injury, sickness, or disease, nor does it allege damages for physical injury to or loss of use of tangible property, nor does it allege any such injury or damage caused by an accident.

60. Therefore, no damages for "bodily injury" or "property damage" caused by an "occurrence" are alleged in the Underlying Lawsuit, so Coverage A does not apply.

61. The insuring agreement of Coverage B of the Policies states that coverage is only afforded for damages that are because of "personal and advertising injury."

62. The Underlying Lawsuit does not allege damages for injury arising out of false arrest, false detention, false imprisonment, malicious prosecution, wrongful eviction, wrongful entry, invasion of the right of private occupancy, defamation, disparagement, violation of a person's right to privacy, the use of another's advertising idea, copyright infringement, trade dress infringement, or slogan infringement.

63. Therefore, no damages for "personal and advertising injury" are alleged in the Underlying Lawsuit, so Coverage B does not apply.

64. Moreover, Coverage B of the Policies specifically excludes coverage for "personal and advertising injury" arising out of the infringement of any trademark. Alleged trademark infringement is the basis of all the claims asserted in the Underlying Lawsuit.

65. Furthermore, the attorneys' fees sought in the Underlying Lawsuit are not damages that come within the insuring agreements of the Policies and are excluded from coverage by the Policies' supplementary payments provision which bars coverage for attorneys' fees and expenses taxed against the insured.

66. Finally, the injunctive relief sought in the Underlying Lawsuit does not pertain to damages, nor does it pertain to "bodily injury," "property damage," or "personal and advertising injury."

67. Therefore, neither Coverage A nor Coverage B of the Policies afford coverage with respect to the claims asserted in the Underlying Lawsuit. As such, Plaintiffs have no duty to defend or indemnify Autoplex with respect to the Underlying Lawsuit.

**WHEREFORE**, Plaintiffs respectfully request this Court to declare the rights and obligations of the parties under the Policies and to enter judgment in favor of Plaintiffs, adjudging and declaring that there is no applicable coverage under the Policies for any claims asserted in the

Underlying Lawsuit, that Plaintiffs have no duty to defend Autoplex in the Underlying Lawsuit, that Plaintiffs have no duty to indemnify Autoplex in the Underlying Lawsuit, and that Plaintiffs are entitled to such further relief as the Court deems just and proper under the circumstances.

Respectfully submitted this 25th day of September, 2026.

Respectfully submitted,

**PHELPS DUNBAR, LLC**

*/s/ Kasi G. Schuelke*
Kasi Schuelke
Texas Bar No. 24098915
2102 E. State Highway 114, Suite 207
Southlake, TX 76092
817-305-0326
817-488-3214 (fax)
Kasi.schuelke@phelps.com
*Attorneys for Plaintiffs*